SMITH v. SMITH.

1. The decision of the Circuit Judge on a question of location approved; and the courses of a deed, which purported to convey 150 acres, held not to include an adjoining tract of 1,100 acres.
2. Under a devise to W. in trust for the use of S., to permit S. to have the rents and profits for the term of his natural life, and then to hold for the children of S. until the eldest arrives at the age of 21, and then to convey to such children, the use was not executed, but the legal estate remained in W., as trustee, to enable him to perform the duties imposed upon him.
3. If the use were executed by the statute, the rule in *Shelley's Case* would not apply, but the children of S., after his death, would take as purchasers from the testator.
4. The word "children" in this devise means the immediate offspring, and is not synonymous with "heirs of the body" or "issue."
5. Where a father *bona fide* made a voluntary deed to his daughter, and subsequently sold other lands to A., with a covenant of general warranty, which was afterwards broken, the daughter is entitled to retain her land against the claim of A., the subsequent creditor.

Before HUDSON, J., Marion, July, 1885.

This was an action by Stephen Smith against the administratrix and children of Samuel S. Smith, to recover under a covenant of warranty contained in a deed of Samuel S. Smith to Stephen Smith, the breach being a prior encumbrance fixed by the case of *Clark* v. *Smith*, 13 *S. C.*, 592. The opinion states the case. The Circuit decree, after stating the facts and quoting the words of the will of Samuel Smith, jr., proceeded as follows:

I have taken the trouble to copy in full these clauses before commenting upon them, because of the vast research and learning brought to bear by the counsel for the plaintiff in giving construction to them. He contends, in the first place, that the trust here created is one that is executed by the statute and converted into a legal estate in Samuel Smith, the life-tenant, and that the trust being thus removed, the limitations are such as give a fee simple to the said first taker, Samuel Smith, jr., under the rule in *Shelley's Case.*

I will not attempt to follow the learned counsel through his able argument upon this construction, neither as regards the application of the statute of uses, nor the rule in *Shelley's Case.* The simple question is, whether Samuel Smith, jr., under this devise took a life estate or a fee simple. It is difficult for me to conceive what language could be used more clearly creating a life estate in Samuel, than the language of the testator, and I hold that such is all he had, and it matters not whether it was legal or in trust, whether the statute executed the use or not. But the statute did not execute the use, nor do the limitations come within the rule in *Shelley's Case.* At the death of Samuel, jr., his estate terminated, and the children he left surviving him take as remaindermen under the will, and not as heirs at law of the life-tenant. They hold none of this property as descended real estate, so far as the will affects it.

But it is contended by the plaintiff's counsel that the testator, Samuel Smith, sr., revoked or abrogated this part of the will, because, after its execution and before his death, he conveyed this land by deed to his son, Samuel Smith, jr., in fee simple, bearing date January 22, 1857. This deed conveys *one hundred and*

20

*fifty acres* of land, more or less, calling for a plat as representing the boundaries, and gives the metes and bounds in a very general manner. The only plat then proved to be in existence is one made as far back as 1840, by surveyor Carmichael, and is a plat of one hundred and fifty acres of land, conveyed by one Turberville to the testator May 14, 1839, and it lies adjacent to, and north of, the Robbins tract, which latter tract is very large, containing over one thousand acres, a fact well known to the testator when he devised it in trust for Samuel and his children, as above set forth. He could not have been so careless and thoughtless as to convey the Robbins land as containing only one hundred and fifty acres, more or less. The description by metes and bounds in the deed of January 22, 1857, fits reasonably well the metes and bounds of the Turberville tract, as found upon the only plat then in existence, and to which he evidently refers, and made it a part of the deed. The area or quantity fits it exactly. Whilst it would be against all the facts and circumstances of the case to so strain matters as to make the deed include the Robbins land within its metes and bounds, I hold that it does not, and that the will alone conveys the latter large tract. The bequest and devise above were never revoked.

But plaintiff's counsel contends that at all events, and in any view of the case, Samuel Smith, jr., died intestate as to this 150 acres of land. It is conceded that on August 16, 1862, he sold it to his daughter, Mrs. Virginia Connerly, who was then a young girl; and this was nearly a month before he entered into the contract of warranty, in selling a six hundred acre tract to his brother, the present plaintiff. But when his deed was put on record on June 28, 1866, Mrs. Connerly did not have it probated, and plaintiff's counsel says that such record is no notice, and that his client stands in the position of a subsequent creditor without notice. I don't think he can, after so long a time, nor in any point of view, make assets descended out of this land. This was in 1862, about twenty years before this suit was instituted, when Samuel Smith, jr., so far as we know, was perfectly solvent. In 1869, for the sake of a more formal deed, and a more definite description of the land, he executed a deed of confirmation, which was duly recorded; an unnecessary act, however.

The daughter has all along been in possession; and to say now that this deed can be set aside as a fraud, or as void for want of probate when recorded, and thus make the land assets descended; that is, that grantor was seized as of fee of this land at the time of his death in 1880, eighteen years after he had in due and proper form conveyed it to his child, would be doing violence to every principle of law and equity.   I hold that under no legal or equitable right can the plaintiff subject this land to the payment of a debt accruing upon a contract entered into with the grantor, after he had parted with this land, and upon which contract a right of action did not accrue for seventeen or eighteen years thereafter. There is no shadow of evidence that when Samuel Smith, jr., gave this land to his daughter, he had in contemplation the committing of a fraud upon his brother Stephen by subsequently selling to him an encumbered tract of land.   I conclude that in no point of view can this daughter's land be regarded as derived from her father by descent.

The plaintiff, in my judgment, has failed to show that at the time of his death Samuel Smith, jr., was seized and possessed of any lands now in the hands of his heirs, or of any land whatever. The defendants, having received no assets by descent from their said father, are not liable in this action.

It is therefore ordered, adjudged, and decreed, that the complaint be dismissed with costs.

From this decree, the plaintiff appealed upon the exceptions stated in the opinion of this court.

*Mr. W. W. Sellers*, for appellant.

The statute executed the use in this case, for there was nothing for the trustee to do.  1 *Lead. Cas. Eq.*, 60, 61;  4 *Rich. Eq.*, 476;  2 *McCord*, 252;  1 *Speer*, 365;  4 *Strob. Eq.*, 66;  3 *Jarm. Wills*, 134;  10 *S. C.*, 376;  18 *Id.*, 184.   And under the operation of the rule in *Shelley's Case*, the heirs of Samuel S. Smith take by limitation and not by purchase.  2 *Bl. Com.*, 242;  1 *Rich. Eq.*, 404;  3 *Id.*, 156;  3 *Hill*, 193;  3 *Jarm. Wills*, 103, 106, 115–8, 150–3, 182–3; *McMull. Eq.*, 347; *Bail. Eq.*, 48; 4 *Kent.*, 228;  1 *Rich. Eq.*, 265, 268.   The devise was revoked by the subsequent alienation of the land to Samuel S. Smith, by

courses which included this Robbins land.  1 _Rich._, 491; 3 _Strob._, 122, 127; 2 _Mill Con. R._, 98.

_Mr. Ferd. D. Bryant_, contra.

March 3, 1886.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   The facts of this case are somewhat involved, and in order to understand the points made, it will be proper to make a short statement.   Stephen Smith, the plaintiff, claiming to be a creditor of his deceased brother, Samuel S. Smith, instituted this proceeding against his children (heirs), to make liable for his alleged debt certain lands in their possession, claimed to have descended to them from their father, the said Samuel S.   He died intestate, leaving no personal estate, and his heirs at law deny that they inherited any lands from him, and whether they did so or not was the question in the case.   The contention was principally in regard to two tracts of land, viz., the "Robbins land," consisting of something over 1,000 acres, and a small tract of land adjoining, consisting of 150 acres, and known as the "mill tract," or "Turberville land;" and to prevent confusion we will take them up separately.

As to the Robbins land.   Samuel Smith, sr., the father of Samuel S. Smith and the grandfather of most of the defendants, died in 1857, leaving a will bearing date in 1849, by which he devised the Robbins land as follows: "I also give and bequeath to my said son, Wm. H. Smith, the tract of land known as the Robbins land, to have and to hold and to stand seized and possessed of the same to and for the uses and purposes that I have given the three last named negroes, Randall, Betty, and Handy, for the benefit of my son, Samuel Smith, to be held, conveyed, and disposed of by him in the same manner and upon the same trusts and limitations as the said last mentioned negroes given to him, the said Wm. H. Smith."

The uses and purposes declared as to the negroes in a former part of the will were as follows: "In the further trust and confidence, also, that he, the said Wm. H. Smith, do stand seized and possessed of the negroes (naming them) to the use and benefit of my son, Samuel Smith, and that he permit the said Samuel to

have the labor, hire, and services of the said negro slaves and their increase for and during the term of his natural life, and at his death, if there be no child of the said Samuel, who shall have arrived at the age of twenty-one years (when the division hereinafter is to take place), to hold the said slaves and their increase for the use and benefit of the children of the said Samuel until a child of the said Samuel arrives at the age of twenty-one years; and if the said child be dead, until such time as such child would have arrived at such age if living, then to convey and deliver the said slaves and their increase to the children of the said Samuel or the survivors of them, the child or children of any such child or children to represent or receive the share or shares that the parent or parents would have received if living," &c.

In a subsequent clause of the will, and affecting all the bequests and devises to his various children, the testator further says: "It is, further, my will and desire that if any of my above named seven children should die without leaving a child or children or grandchildren him surviving, the share or shares which I have given such child or children who may die as aforesaid, shall be equally divided between the survivor or survivors of them, and the children of them who may be dead, the child or children of any such who may be dead at the happening of such event to represent and receive the portion or portions of such that the parent of such child or children would have received if living. Such portion of such child or children dying without child or children or grandchildren, as aforesaid, to be vested in the trustee or trustees, when the same appointed to be held by such trustee, upon the same trusts, limitations, and conditions which are provided in the respective clauses relating thereto," &c.

Under these provisions of the will of Samuel Smith, sr., it was contended for the plaintiff, that though the land was devised to Wm. H. Smith, as trustee, for the use of Samuel S. Smith during his life, and then over to his children, the statute executed the use; and, the trust being thus removed, the limitations are such as, under the operation of the rule in *Shelley's Case*, to give a fee simple to the first taker, Samuel S. Smith, of which he died seized and possessed. Upon this question of construction the Circuit Judge held with the defendants—that they did not inherit

the Robbins land from their father, but received it as devisees under the will of their grandfather, Samuel Smith, sr.

But assuming this to be the proper construction of· the will of Samuel Smith, sr., the plaintiff further contends that the Robbins land did not pass under and subject to the trusts and limitations of the will; but that the testator, after he had executed his will (in January, 1857), in consideration of $400, conveyed directly to Samuel S. Smith a tract of land, described in the deed itself as containing 150 acres, but which deed, properly understood, embraces and conveys in addition to the 150 acres the whole of the Robbins land, containing something more than a thousand acres. The defendants, on the other hand, contest this construction of the deed, and insist that the only land intended to be conveyed, or actually conveyed by that deed, was the mill or Turberville tract of 150 acres, which corresponded precisely with the number of acres and reasonably well with the description in the deed. This was little more than a question of location, as to which, also, the Circuit Judge held with the defendants—that the aforesaid deed did not cover and convey the Robbins land, which remained the property of Samuel Smith, sr., until his death, and passed under his will.

As to the small parcel known as the mill tract. We have already seen that this tract did not pass under the will of Samuel Smith, sr., but on January 22, 1857, was conveyed directly to Samuel S. Smith by deed. It also appeared that on August 16, 1862, the said Samuel S., in consideration of love and affection, conveyed this land, united with 100 acres of the Robbins land, making 250 acres, to his daughter, Virginia Alice Smith (now Connerly), when she was a little girl. This deed was recorded June 28, 1866, but it did not appear that it had been probated, and a more full and formal deed was executed in 1869. The deed was made before S. S. Smith executed the covenant of warranty, out of which arose, years after, the claim of plaintiff as creditor, ·and, as far as appears, the donor was then solvent. The donee, Virginia Alice, married F. H. Connerly in 1869, and they have been in actual possession of the land ever since. The plaintiff claims that, although a subsequent creditor of the donor, he ·is a creditor without notice, as the first informal deed, having been

recorded without regular probate, was not constructive notice to him, and he may have it set aside as void, leaving the land as the intestate property of Samuel S. Smith, deceased. The Circuit Judge ruled with the defendants, saying: "I hold that under no legal or equitable right can the plaintiff subject this land to the payment of a debt, accruing upon a contract entered into with the grantor, after he had parted with this land, and upon which contract a right of action did not accrue for seventeen or eighteen years thereafter. There is no shadow of evidence that when Samuel S. Smith, jr., gave this land to his daughter, he had in contemplation the committing of a fraud upon his brother Stephen by subsequently selling to him an encumbered tract of land. I conclude that in no point of view can this daughter's land be regarded as derived from her father by descent," &c.

The plaintiff appealed upon the following grounds:

1. "Because his honor erred in not decreeing that the statute of uses executed the trusts of the will of Samuel Smith, sr., so far as it related to Samuel Smith, jr., and transferred the legal estate to Samuel, junior, the *cestui que trust*.

2. "Because his honor erred in not decreeing that the life estate given to Samuel Smith, jr., in the will of testator was by proper construction and operation of law enlarged into an estate in fee simple.

3. "Because his honor erred in not decreeing that, the statute executing the use, the rule in *Shelley's Case* applied, and the children (heirs) of Samuel, jr., took by limitation and not by purchase.

4. "Because his honor erred in not decreeing that testator revoked his will *quoad hoc* by his deed of January 22, 1857, to Samuel, jr., conveying 150 acres of land, more or less, adjacent to the lands devised, and so bounding the lands conveyed as to include the lands devised.

5. "Because his honor erred in not decreeing that the will, being thus revoked, the heirs at law of Samuel, jr., had real assets by descent, and were liable for the breach of their ancestor's covenant of warranty, after eviction.

6. "Because his honor erred in not decreeing that the four deeds of Samuel, jr., to his four daughters, and especially the one

to his daughter, Virginia A., on August 16 and 17, 1862, being voluntary and not recorded, were fraudulent and void as to plaintiff, a subsequent creditor without notice, under 13 and 27 Statute Elizabeth.

7. "Because the plaintiff was not barred, either by the statute of limitations or by lapse of time, by any of the four deeds of August, 1862, or by possession under them, as the plaintiff had no right of action, as to the fraudulent conveyances, until breach of the covenant by eviction."

First. In regard to the construction of the deed from Samuel Smith, sr., to Samuel S. Smith, of date January 22, 1857. We concur with the Circuit Judge, that said deed, properly construed, did not include the Robbins land, of which at that time there was no plat. The description of the land conveyed is not as full and precise as it might have been, but we think the intention was to convey the little tract on Buck Swamp, known as the mill tract, and no more. That tract had been purchased from Turberville, contained 150 acres, lay north of the Robbins land, and adjoined it for some distance. One Carmichael had made a plat of the tract in 1840, which was manifestly before the parties when the deed in question was made, for the deed also calls for the precise quantity of 150 acres, and gives reasonably the outline of the Carmichael plat nearly down to the point in Buck Swamp where the mill tract touched the Robbins land, and then the description proceeds as follows, "thence down said swamp, as the plat represents, by the Edwards land, thence around to the beginning corner." In order to supply the *hiatus*, it is necessary to determine what was meant by the phrase, "thence around to the beginning corner." Around what? Hardly the Robbins land, of which there was no plat, to which no reference had been made, and which in itself contained about 1,100 acres. We would rather think that the grantor meant around the lines as represented on the plat before him; that is to say, by running down the interior line of the Carmichael plat, which divided the mill tract from the Robbins land, and closing precisely at Bennett Peritts' land, mentioned as the beginning corner. This, we think, is the natural construction, and is the only one which reconciles all parts of the

deed, and is in exact conformity to the number of acres mentioned in it.

· Second. Assuming, then, that the Robbins land passed under the will of Samuel Smith, sr., what is the proper construction of its provisions—what estate did it give and to whom? It is very certain that the land was not devised directly to Samuel S. Smith or his children but to William H. Smith as trustee, "to have and to hold, to stand seized and possessed of the same for certain uses and purposes  *  *  to the use and benefit of my son Samuel, and that he permit the said Samuel to have the profits, rents, and issues for and during the term of his natural life, and at his death, if there be no child of the said Samuel who shall have arrived at the age of twenty-one years, to hold the same for the use and benefit of the children of the said Samuel until a child of the said Samuel arrives at the age of twenty-one years, &c., then to convey and deliver the same to the children of the said Samuel or the survivors of them," &c. It is contended, however, first, that the statute of uses executed the trust and thereby converted the equitable interests of the beneficiaries into legal estates; and then, second, that the life estate given to Samuel S. Smith by operation of the rule in *Shelley's Case* was enlarged into a fee, and that his children did not take by purchase under their grandfather's will, but from their father by descent.

It is possibly true, as stated at the bar, that on this subject there is some want of clearness and consistency in the cases; but, as we understand it, certain principles have been established with reasonable certainty, which, without undertaking to follow the very learned argument of appellants' counsel, we will endeavor to apply to this case. All trusts are not forbidden by the law. It only declares executed a certain class of trusts, the leading test of that class being "that where the intention is that the estate shall not be executed in the *cestui que use*, and any object is to be affected by its remaining in the trustee, then it shall not be executed." Tried by this test we are of opinion that the trusts here belong to that class which the law will not execute. There cannot be the least doubt about the intention. Most manifestly the testator did not intend that the estate should be executed. And it seems to us equally clear that there were several objects

to be effected by its remaining in the trustee. The land was devised *to him*, and he was to "hold, stand seized, and be possessed of it" for the use of Samuel S. Smith during his life, then until a child should attain the age of twenty-one years, and then to convey and deliver the same to the children of the said Samuel or the survivors of them. We cannot think this was a mere passive trust. *The Escheator* v. *Smith*, 4 *McCord*, 452; *Posey* v. *Cook*, 1 *Hill*, 414; *Porter* v. *Doby*, 2 *Rich. Eq.*, 52; *McCaw* v. *Galbraith*, 7 *Rich.*, 80; *Bristow* v. *McCall*, 16 *S. C.*, 546, and *Farr* v. *Gilreath*, 23 *Id.*, 502.

Third. But if the statute eliminated the trusts and converted the interests given into direct legal estates, we do not see that the limitations are such as to make the rule in *Shelley's Case* applicable. We know of no clearer definition of the rule than that given by Chancellor Harper in *Williams* v. *Foster*, 3 *Hill*, 194: "By the rule in *Shelley's Case* it was determined that if an estate of freehold is given to the ancestor and a remainder be therein limited to his heirs or the heirs of his body, such remainder is immediately executed in possession in the ancestor so taking the freehold and he takes an estate in fee or in tail according to the terms of the limitation." As we understand it, the principle is that where the remainder is given to the very persons who would without such remainder take by descent from the life tenant, they shall be held to take by descent and not by purchase. Now, the persons who would have taken by descent from Samuel S. Smith were his lineal descendants in an unbroken line to the remotest generation as his heirs.

Was the remainder in this will given to such heirs by an indefinite line of descent? It seems to us not. Neither heirs, nor heirs of the body, nor even issue are mentioned in the will. The word used is "children," the legal construction of which accords with its popular signification, namely, as designating the immediate offspring; for in all the cases in which it has been extended to a wider range of objects, it was used synonymously with a word of larger import as issue. See 2 *Jarm. Wills*, 690, and notes to 4th *Amer. Edit.* There is nothing in the will which requires us to construe "children" as synonymous with "heirs," or "issue," or "heirs of the body." On the contrary,

the will indicates clearly a class of persons to take at a particular period, and they therefore take as purchasers—devisees under the will of their grandfather, and not by descent from their father. See *McLure* v. *Young*, 3 *Rich. Eq.*, 574; *Bannister* v. *Bull*, 16 *S. C.*, 228; *McIntyre* v. *McIntyre, Ibid.*, 294; *Reeder* v. *Spearman*, 6 *Rich. Eq.*, 88.

Fourth. The only other question is that in reference to the mill tract, which, as we have seen did not pass under the will. This tract was conveyed directly to Samuel S. Smith, and he, in August, 1862, in consideration of love and affection, conveyed by deed to his young daughter, Virginia Alice, who, in January, 1869, married F. A. Connerley, and they have been in possession of it ever since, more than ten years. The plaintiff's claim as creditor of the donor, Samuel S. Smith, arose in this way : After the aforesaid deed to Virginia Alice was executed by her father he sold a tract of land to the plaintiff with warranty of title, which was broken by eviction as late as 1879, and the proceeding is for damages on that covenant of warranty. So that whether we consider the date of the warranty or the breach of it, the claim arose subsequent to the execution of the deed. "It is well settled that a voluntary deed of conveyance by one who is at the time free from debt is not presumptively fraudulent and void as against subsequent creditors; there being no *prima facie* presumption against its validity, the burden of proof rests upon the subsequent creditor, who impeaches it, of showing either an actual fraudulent intent or circumstances from which such fraudulent intent may be inferred." 2 *Pom. Eq. Jur.*, § 973, and notes. See, also, *Iley* v. *Niswanger*, 1 *McCord Ch.*, 518 ; *Henderson* v. *Dodd, Bail. Eq.*, 138; *Blake* v. *Jones, Ibid.*, 141; *Eigleberger* v. *Kibler*, 1 *Hill Ch.*, 114; *Footman* v. *Pendergrass*, 3 *Rich. Eq.*, 42.

From the circumstances of the case, and particularly in view of the fact that the claim of the creditor consists in damages for a breach of warranty made many years ago, the Circuit Judge held that the deed from her father to Virginia Alice, though voluntary, was *bona fide* and without any intention on the part of the donor to commit a fraud subsequently upon his brother, Stephen, by selling him a tract of land from which, as it turned

out, he was evicted by paramount title; and in this finding we cannot say that he committed error. As was said by Judge Evans, in *Henderson* v. *Dodd, supra*: "This contingent liability was not such, in my opinion, as to authorize the court to set aside the conveyance of Mrs. Henderson to her son John merely because it was voluntary."

The judgment of this court is, that the judgment of the Circuit Court be affirmed.